UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDUARD VLADIMIROV ANDROSHCHUK,<br><br>Petitioner,<br><br>v.<br><br>MARTIN BITER,<br><br>Respondent. | No. 2:15-cv-1204 MCE AC P<br><br>ORDER AND FINDINGS & RECOMMENDATIONS |

Petitioner, a state prisoner proceeding pro se, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Currently before the court is respondent's fully briefed motion to dismiss.[1] ECF No. 11.

I.     Factual and Procedural Background

On November 19, 2008, a jury convicted petitioner of multiple counts of kidnapping and sexual assault arising from the sexual assaults of three women. ECF No. 1 at 1; Lod. Doc. 1. He was sentenced on January 23, 2009, to a determinate prison term of forty-five years plus a consecutive indeterminate term of seventy-five years to life. Id.

////

---

[1] In the motion to dismiss, respondent requests that Christian Pfeiffer, the current Warden of Kern Valley State Prison, be substituted as the respondent in this matter. ECF No. 11 at 1 fn.1. However, petitioner has since been transferred to High Desert State Prison (ECF No. 19), and the court will instead substitute M. Eliot Spearman, the warden of that facility, as respondent.

1

A. Direct Review

Petitioner, with assistance of counsel, appealed his conviction to the California Court of Appeal, Third Appellate District. Lod. Doc. No. 2. On May 18, 2010, the judgment was modified to require petitioner to register as a sex offender and affirmed in all other respects. Id. Petitioner did not seek review in the California Supreme Court. ECF No. 1 at 2.

B. State Collateral Review

On February 20, 2014,[2] petitioner filed a pro se petition for writ of habeas corpus in the Sacramento County Superior Court. Lod. Doc. No. 3. The petition was denied on April 3, 2014. Lod. Doc. No. 4. In denying the petition, the superior court acknowledged that to the extent petitioner had claims arising from the 2013 revised DNA report, those claims did not appear to be barred as untimely. Id. at 2, 4. The claims were instead denied as being without merit. Id. The petition was otherwise denied as untimely and on the merits. Id. at 1, 3-5.

On May 3, 2014, petitioner filed another pro se petition for writ of habeas corpus in the Sacramento County Superior Court. Lod. Doc. No. 5. The petition was denied on May 22, 2014, as successive and untimely. Lod. Doc. No. 6.

On May 3, 2014, petitioner filed a writ of habeas corpus in the California Court of Appeal, Third Appellate District. Lod. Doc. No. 7. The court of appeal denied the petition without comment on May 22, 2014. Lod. Doc. No. 8.

On July 23, 2014, petitioner filed a petition for writ of habeas corpus in the California Supreme Court. Lod. Doc. No. 9. The petition was denied on October 15, 2014. Lod. Doc. No. 10.

C. The Federal Petition

On May 28, 2015, petitioner filed a pro se petition for writ of habeas corpus. ECF No. 1. The petition alleges four grounds for relief. Grounds One, Two, and Four allege that new evidence became available after the trial that would have changed the outcome of the case. ECF No. 1 at 5, 7, 10. Specifically, petitioner alleges in Ground One that after the trial the DNA report

---

[2] The prison mailbox rule was used in determining the filing date of documents submitted when petitioner was proceeding pro se. See Houston v. Lack, 487 U.S. 266 (1988).

was revised; in Ground Two that a new witness statement became available; and in Ground Four that Department of Motor Vehicles (DMV) records became available that would have impeached the testimony of one of the victims. In Ground Three, petitioner alleges that the prosecutor withheld an exculpatory video. Id. at 8.

## II.     Motion to Dismiss

Respondent argues that the petition should be dismissed because it was filed outside the one-year statute of limitations. ECF No. 11. He asserts that petitioner's state collateral actions do not entitle petitioner to statutory tolling because they were filed after the statute of limitations had expired, and further argues that they could not toll the statute of limitations in any event because they were not properly filed. Id. at 4-5.

Petitioner opposes the motion on the ground that he is entitled to an alternate trigger date based on the discovery of new evidence, and that in relation to the alternate trigger date he is entitled to statutory tolling, making his petition timely. ECF No. 22.

In response, respondent argues that the petition is untimely even if petitioner is entitled to a later trigger date and some statutory tolling, and that he is not entitled to equitable tolling. ECF No. 27 at 3-11.

## III.    Statute of Limitations

### A. Governing Legal Principles

Section 2244(d)(1) of Title 28 of the United States Code contains a one-year statute of limitations for filing a habeas petition in federal court. The one-year clock commences from one of several alternative triggering dates. 28 U.S.C. § 2244(d)(1). In this case, the potentially applicable dates are (1) that "on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review" and (2) that "on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." § 2244(d)(1)(A), (D).

The statute of limitations is tolled during the time that a properly filed application for state post-conviction or other collateral review is pending in state court. 28 U.S.C. § 2244(d)(2). "An application is '*properly* filed' when its delivery and acceptance are in compliance with the

applicable laws and rules governing filings[,]" Artuz v. Bennett, 531 U.S. 4, 8 (2000) (emphasis in original), including compliance with state timeliness rules, Pace v. DiGuglielmo, 544 U.S. 408, 410 (2005). "The statute of limitations is not tolled from the time when a direct state appeal becomes final to the time when the first state habeas petition is filed because there is nothing 'pending' during that interval." Cross v. Sisto, 676 F.3d 1172, 1179 (9th Cir. 2012). State habeas petitions filed after the one-year statute of limitations has expired do not revive the statute of limitations and have no tolling effect. Ferguson v. Palmateer, 321 F.3d 820, 823 (9th Cir. 2003).

### B. Commencement of the Limitations Period

#### 1. Finality Of The Judgment

On May 18, 2010, the California Court of Appeal modified the judgment on direct review to require petitioner to register as a sex offender, and affirmed the judgment in all other respects. Lod. Doc. 2. Since petitioner did not seek review from the California Supreme Court, the judgment became final on June 27, 2010, after his time to seek review expired. Cal. R. Ct. 8.366(b)(1) (Court of Appeal decision in a criminal appeal is final in that court thirty days after filing); Cal. R. Ct. 8.500(e)(1) (petition for review must be filed within ten day of Court of Appeal decision becoming final in that court). Unless an alternative trigger date applies, the statute of limitations accordingly began running the next day, on June 28, 2010. See Patterson v. Stewart, 251 F.3d 1243, 1247 (9th Cir. 2001) (citing Fed. R. Civ. P. 6(a)) (the day the order or judgment becomes final is excluded and time begins to run the day after the judgment becomes final).

#### 2. Date on Which Claims Could Have Been Discovered

Petitioner contends that the limitations period did not begin to run until March 1, 2013, when he discovered the factual basis of his claims. ECF No. 22 at 1, 5. Specifically, Petitioner alleges that March 1, 2013, is the day he was notified of the amended DNA report that revised the test results with respect to at least one of the victims. Id. at 2.[3] Ground One is petitioner's only

---

[3] Petitioner has provided a copy of the revised report, which is dated August 24, 2012, together with an email documenting transmission of the revised report to counsel on March 1, 2013. ECF No. 1 at 86-114.

4

claim for relief based on the revised DNA report. ECF No. 1 at 5. Although petitioner characterizes his other claims as also based on late-discovered evidence, the court concludes for the reasons which follow that a later trigger date does not apply to any claims other than Ground One.

"The statute of limitations begins to run under § 2244(d)(1)(D) when the factual predicate of a claim '*could* have been discovered through the exercise of due diligence,' not when it *actually* was discovered." Ford v. Gonzalez, 683 F.3d 1230, 1235 (9th Cir. 2012) (emphasis added) (quoting 28 U.S.C. § 2244(d)(1)(D)). It is important to note that the statute of limitations runs from the date the *facts* supporting a claim could be *discovered*, not the date that *evidence* supporting a claim is *obtained*. 28 U.S.C. § 2244(d)(1)(D). "The 'due diligence' clock starts ticking when a person knows or through diligence could discover the vital facts, regardless of when their legal significance is actually discovered." Ford, 683 F.3d at 1235 (citations omitted).

Ground One is based on the 2012 DNA report that was disclosed on March 1, 2013, and is therefore entitled to the alternate trigger date advanced by petitioner. See ECF No. 1 at 5. The revised DNA report and its transmittal email reflect that the District Attorney's Laboratory of Forensic Services revised its interpretation and statistical calculation of evidence after petitioner's judgment and sentence, and that the revision was disclosed on March 1, 2013 as petitioner alleges. Id. at 86 (email cover letter); see also at 87-114 (revised DNA report). Petitioner could not have discovered the factual predicate for Ground One prior to March 1, 2013 when all counsel were first notified of the revision. Petitioner's other claims for relief, however, are based on distinct evidence that could have been discovered through the exercise of due diligence at the time of trial.

Ground Two is based on a "new witness statement" from the person who drove petitioner and one of the victims around on the night of the sexual assault. ECF No. 1 at 7, 119-120. Although petitioner alleges that the undated supporting witness statement "became available in May/June of 2013," id. at 7, the facts contained in the statement were readily discoverable at the time of trial. Petitioner was aware of the identity of the driver, and knew what had transpired in the car. He was therefore aware of the evidence known to the witness. He also knew that the

witness did not testify at his trial. Accordingly, the factual predicate of the claim was known to petitioner at the time, and could have been developed earlier. The date on which petitioner obtained the declaration that supports his claim is not dispositive. See Ford, 683 F.3d at 1235.

Ground Three alleges that the prosecutor improperly withheld an exculpatory surveillance video. ECF No. 1 at 8. Petitioner does not say when he became aware of the video recording. The existence of the surveillance tape was known prior to trial, however – it is identified in the police report about the incident. Id. at 126. Even if petitioner was previously unaware of the contents of the video, it could have been discovered with due diligence at the time of trial.

Ground Four alleges that petitioner's family did not purchase the car identified by victim L.S. until a year after the assault. Id. at 10. The "newly discovered evidence" consists of DMV registration information. Id. at 213 (printout generated May 1, 2014). Regardless of when petitioner obtained this documentation, he would have known at the time of trial whether his family owned or had access to the vehicle in question. The DMV record is merely documentary support for facts that were known or could have been discovered with reasonably diligent investigation at the time of trial.

For the reasons explained above, the undersigned concludes that the statute of limitations began to run as to Grounds Two, Three and Four upon finality of the judgment, and as to Ground One on March 1, 2013.

C. Timeliness of Ground One

Assuming that March 1, 2013, was the date petitioner became aware of the factual basis for his claim, the statute of limitations began running the following day and expired on March 1, 2014.[4] The federal petition was filed over a year later, on May 28, 2015. Ground One is therefore untimely unless petitioner is entitled to tolling.

////

---

[4] Contrary to petitioner's assertion (ECF No. 22 at 5), the time for petitioning for writ of certiorari does not act as an automatic extension of the one-year statute of limitations. Additionally, the time for petitioning for certiorari is only used to determine the date of finality with respect to a direct appeal and does not toll the statute of limitations with respect to a collateral appeal. Lawrence v. Florida, 549 U.S. 327, 333-34, 337 (2007).

1. <u>Statutory Tolling</u>

Petitioner's first state habeas petition was filed on February 20, 2014, after 355 days of the one-year period had elapsed. Lod. Doc. 3. Respondent argues that petitioner is not entitled to tolling for any of his state habeas petitions because they were denied as untimely and therefore were not properly filed. Respondent contends in the alternative that if petitioner is entitled to tolling, it is only for the forty-three days that his first state petition was pending. ECF No. 27 at 3-4.

A review of the first state habeas petition shows that while the superior court did find that the petition was untimely, it also found that petitioner's claims based upon the revised DNA report did not appear to be untimely. The DNA claims were nonetheless denied as meritless. Lod. Doc. 4 at 1-3. Accordingly, the undersigned assumes without deciding that the first state habeas petition was timely as to the claims based on the revised DNA report, and that it therefore was properly filed and tolls the statute of limitations.

Respondent argues next that the second superior court habeas petition was denied as untimely and was therefore not properly filed. ECF No. 27 at 4. He further argues that the silent denials by the California Court of Appeal and California Supreme Court are presumed to have upheld that determination. There are two problems with this argument. First, it does not appear that either party has provided the court with a copy of the California Supreme Court's order denying the petition. Instead, petitioner provided a copy of the California Supreme Court's case summary showing the case was closed, and respondent provided a copy of the docket showing that the petition was denied. ECF No. 1 at 18; Lod. Doc. 10. Neither of these is sufficient for this court to make a determination as to the *contents* of the denial. While the undersigned is aware from experience that California Supreme Court docket sheets generally do reflect the content of orders denying habeas relief, a docket report is *not* an order and does not conclusively establish the contents of the orders it references. However, because it is ultimately immaterial to the disposition of this case, respondent will not be required to provide a copy of the California Supreme Court's order.

////

The second problem with respondent's argument is that it is not clear that the superior court order denying the second superior court petition is the order considered by the California Court of Appeal and Supreme Court in denying the petitions before them.  Although it appears that the Court of Appeal was aware of the second state habeas petition, it was also aware of the first state habeas petition.  Lod. Doc. 7 at 1.  Moreover, the second superior court petition and the court of appeal petition were both denied on May 22, 2014, and there is nothing to indicate that the superior court order was the first filed of the two and therefore the last reasoned decision by a state court at the time the court of appeal issued its order.  Lod. Doc. 6; Lod. Doc. 8.  Although the fact that both petitions were denied on the same day is likely more than coincidence, and suggests that the appellate court decision came second in time, there is nothing to conclusively establish this fact and the undersigned cannot rule out the possibility that the Court of Appeal decision was based on the order denying the first state habeas petition.

However, even if the court were to assume that the statute of limitations was tolled from the filing of the first state habeas petition through the denial by the California Supreme Court, the federal petition would still be untimely.  The California Supreme Court denied the petition on October 15, 2014 (Lod. Doc. 10), and petitioner did not file his federal petition until May 28, 2015 (ECF No. 1), 225 days later.  This far exceeds the ten days petitioner had left to file a timely habeas petition in federal court.  Accordingly, Ground One must be dismissed as untimely unless petitioner is entitled to equitable tolling.

          2.   Equitable Tolling

A habeas petitioner is entitled to equitable tolling of AEDPA's one-year statute of limitations only if he shows: "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing."  Holland v. Florida, 560 U.S. 631, 649 (2010) (quoting Pace, 544 U.S. at 418).  "[T]he statute-of-limitations clock stops running when extraordinary circumstances first arise, but the clock resumes running once the extraordinary circumstances have ended or when the petitioner ceases to exercise reasonable diligence, whichever occurs earlier."  Luna v. Kernan, 784 F.3d 640, 651 (9th Cir. 2015) (citing Gibbs v. Legrand, 767 F.3d 879, 891-92 (9th Cir. 2014).  An "extraordinary

1 circumstance" has been defined as an external force that is beyond the inmate's control. Miles v.
2 Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999). "The diligence required for equitable tolling
3 purposes is 'reasonable diligence,' not 'maximum feasible diligence.'" Holland, 560 U.S. at 653
4 (internal citations and additional quotation marks omitted); see also Bills v. Clark, 628 F.3d 1092,
5 1096 (9th Cir. 2010).

Although petitioner does not explicitly argue that he is entitled to equitable relief, respondent has construed his arguments related to the timeliness of his state petitions as potential claims for such relief. ECF No. 27 at 8 n.3. In his opposition to the motion to dismiss, petitioner argues that his state court petitions were not untimely because they were filed within a reasonable time given the complicated issues; his limited ability to speak and write in English, which is not his native language; and the fact that he had to rely on the assistance of other inmates. ECF No. 22 at 7, 9. However, none of these general limitations rises to the level of an extraordinary circumstance.

"[A] pro se petitioner's lack of legal sophistication is not, by itself, an extraordinary circumstance warranting equitable tolling." Rasberry v. Garcia, 448 F.3d 1150, 1154 (9th Cir. 2006); Martinez v. Ryan, 133 F. App'x 382, 383 (9th Cir. 2005) (limited education, reliance on other prisoners to file petition, and lack of access to legal materials and assistance due to custody status do not constitute extraordinary circumstances); see also Hughes v. Idaho State Bd. of Corr., 800 F.2d 905, 909 (9th Cir. 1986) (pro se prisoner's illiteracy and lack of knowledge of the law unfortunate but insufficient to establish cause). Moreover, the Ninth Circuit has held that "a petitioner who demonstrates proficiency in English or who has the assistance of a translator would be barred from equitable relief." Mendoza v. Carey, 449 F.3d 1065, 1070 (9th Cir. 2006) (citing Cobas v. Burgess, 306 F.3d 441, 444 (6th Cir. 2002)). Petitioner makes no claim that he was unable to find assistance, only that he required it, and there is no evidence that he was unable to obtain assistance with his state petitions. ECF No. 22 at 7, 9. In fact, if petitioner's allegations regarding the degree of his inability to understand English are believed, the existence of the state petitions themselves demonstrates that he was able to obtain assistance. The instant petition and the state habeas petitions are also devoid of any information that would support a finding of an

9

extraordinary circumstance. ECF No. 1; Lod. Docs. 3, 5, 7, 9.

Moreover, the circumstances petitioner presents do not explain the 225 day gap between the denial of petitioner's California Supreme Court petition and the filing of the instant petition. Petitioner could have simply filed his state habeas petition in this court, and his failure to do so is inconsistent with reasonable diligence. See Holland, 560 U.S. at 653.

Accordingly, petitioner is not entitled to equitable tolling.

### 3. Actual Innocence

A showing of actual innocence can also satisfy the requirements for equitable tolling. Lee v. Lampert, 653 F.3d 929, 937 (9th Cir. 2011) (en banc); McQuiggin v. Perkins, 133 S. Ct. 1924, 1928 (2013). "[W]here an otherwise time-barred habeas petitioner demonstrates that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt, the petitioner may pass through the Schlup [v. Delo, 513 U.S. 298 (1995)] gateway and have his constitutional claims heard on the merits." Lee, 653 F.3d at 937; accord, McQuiggin, 133 S.Ct. at 1928. Although petitioner does not raise an express claim of actual innocence in response to the motion to dismiss, it is clear from the petition and attachments that he is claiming to be actually innocent. The court will therefore address each piece of "new" evidence put forth in the petition.

When petitioner was directed to respond to the instant motion to dismiss, he was specifically advised that if he was trying to claim actual innocence, he "'must produce proof of his innocence that is sufficient to convince a federal court that a failure to entertain his claim would constitute a fundamental miscarriage of justice' in order to invoke the actual innocence exception to the statute of limitations." ECF No. 20 at 3 (quoting Larsen v. Soto, 742 F.3d 1083, 1095 (9th Cir. 2013)). The court further advised that

> [t]he Supreme Court held in Schlup v. Delo, 513 U.S. 298, 314-15 (1995), that a habeas petitioner who makes a "colorable claim of factual innocence" that would implicate a "fundamental miscarriage of justice" may be entitled to have "otherwise barred constitutional claim[s] considered on the merits." To invoke the miscarriage of justice exception to AEDPA's statute of limitations, a petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence. McQuiggin v. Perkins, 133 S. Ct. 1924, 1928 (2013). This exception is concerned with actual, as opposed to legal, innocence and must be

> based on reliable evidence not presented at trial. Schlup, 513 U.S. at 324; Calderon v. Thompson, 523 U.S. 538, 559 (1998). To make a credible claim of actual innocence, petitioner must produce "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." Schlup, 513 U.S. at 324.

ECF No. 20 at 4.

With respect to the DNA reports at issue on Ground One, petitioner was specifically warned that speculation about the possibility of new evidence was not sufficient. The court noted that because "the DNA reports have not been analyzed and interpreted, their exculpatory value is unknown and they are insufficient to establish a 'colorable claim of factual innocence.'" Id. Petitioner has failed to put forth any additional evidence showing that the DNA reports have been analyzed and interpreted such that they would support his claim of factual innocence. Accordingly, there is no new evidence from which the court can conclude "'that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.'" Lee, 653 at 938 (quoting Schlup, 513 U.S. at 327). Neither does petitioner's evidence in support of his other claims meet the standard for an actual innocence showing.[5] Petitioner identifies no other evidence relevant to his asserted innocence. For all these reasons, the court rejects the innocence claim.

#### 4. Ground One Is Untimely

Petitioner filed his DNA-related claim in this court more than one year after discovery of its factual predicate. Even if the court assumes that the running of the limitations period was statutorily tolled from February 20, 2014 through October 15, 2014, it nonetheless expired before the federal petition was filed. Petitioner has not established a basis for equitable tolling or made a showing of actual innocence. Accordingly, Ground One must be dismissed as untimely.

### D. Timeliness of Grounds Two Through Four

For the reasons previously explained, the limitations period applicable to petitioner's additional claims began running on June 28, 2010, the day after his conviction became final.

---

[5] That evidence is discussed more fully below in discussion of the timeliness of Grounds Two, Three, and Four.

11

Petitioner thus had until June 27, 2011 to file a federal petition containing Grounds Two, Three and Four. Because the federal petition was filed on May 28, 2015, it is untimely absent continuous tolling between June 27, 2011 and May 28, 2015.

### 1. Statutory Tolling

Because petitioner's applications for state collateral relief were all filed after June 27, 2011, when the federal limitations period expired, they have no tolling effect. A limitations period that has lapsed is not revived after the fact by the filing of a state petition. Ferguson, 321 F.3d at 823.

### 2. Equitable Tolling

For the reasons previously explained in regard to Ground One, the circumstances on which petitioner relies do not constitute "extraordinary circumstances" for purposes of equitable tolling. Moreover, petitioner has made no showing of diligence in the development of these claims. He is therefore not entitled to equitable tolling.

### 3. Actual Innocence

The court has already found that the revised DNA report does not establish factual innocence. That discussion is incorporated here. Petitioner has presented evidence that he characterizes as "new evidence" in support of his other claims, but none of it constitutes new evidence in light of which no reasonable juror would have convicted him. See Lee, 653 at 938.

In Ground Two, petitioner asserts that he obtained a new witness statement in May or June of 2013. ECF No. 1 at 7. From his state habeas petitions it appears that the witness was petitioner's younger brother, who was a minor at the time of the trial and was allegedly "prevented" from testifying by his parents and the court. Id. at 30-31, 54, 81. However, review of the witness statement fails to establish that no reasonable juror would have convicted petitioner in light of the new evidence. According to the sworn statement, petitioner and the victim were in the backseat of the car while petitioner's brother drove them around on the night of the incident. Id. at 119. The declaration further states that the brother "did not witness the actual intercourse between defendant Androshchuk and Deborah L., but once again [he is] the sole witness to the fact that there was no physical forces [sic] used of any kind on the victim." Id. Assuming the

truth of the statements in the declaration, it is unclear how this new witness can testify that no physical force was used when he did not actually witness the intercourse between petitioner and the victim or what occurred after. Petitioner's own account of the incident demonstrates that his brother's testimony would not establish his innocence. He specifically states that they parked the car and his brother got out and started walking home so that petitioner and the victim could have sex in the backseat. Id. at 31. Accordingly, reasonable jurors could have found petitioner guilty even if they heard the driver's testimony.

In support of Ground Three, petitioner alleges that the prosecutor withheld an exculpatory surveillance video from the 7-11 where they stopped to get condoms, but fails to produce the video or explain in any detail what the video would have shown. Id. at 8, 32, 41. Petitioner states only that the video would have shown the victim was actually "a willing participant in the consensual sex for money (prostitution) and that she was not abducted from the scene by force or threat of force." Id. at 41. However, there is no indication that petitioner has ever viewed the video. Moreover, in his account of events it does not appear that he and the victim ever exited the car while at the 7-11, and petitioner further indicates that they left the 7-11 before engaging in any sexual activity. Id. at 31, 67-68. Reasonable jurors could vote to convict on all counts even if they had seen video footage demonstrating the victim's compliance with petitioner at or around the 7-11.

Finally, petitioner alleges in Ground Four that a DMV sales record shows that the vehicle identified by victim L.S. in 2005 was not purchased by his family until 2006. Id. at 10. However, he does not demonstrate that he did not have access to the vehicle prior to 2006. Id. The record also does not show who owned the vehicle prior to petitioner's family. Id. at 213. Though it indicates that the vehicle was salvaged, that does not rule out the possibility that it was previously owned by petitioner's family. See Cal. Veh. Code §§ 544(b), 11515(b) (defining "total loss salvage vehicle" and identifying circumstance in which a vehicle's owner may be issued a subsequent salvage certificate).

Petitioner has proffered no other "new evidence" to establish his innocence.

For all these reasons, petitioner has failed to put forth any new evidence from which the

court can conclude "'that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.'" Lee, 653 at 938 (quoting Schlup, 513 U.S. at 327).

### 4. Grounds Two Through Four Are Untimely

Petitioner filed his federal habeas petition almost five years after his conviction became final, which is almost four years too late. Because neither statutory nor equitable tolling apply to Grounds Two through Four, and petitioner has not demonstrated actual innocence, these claims are untimely and must be dismissed.

## IV. Summary

Petitioner had a year to file his federal habeas petition after his conviction became final. The statute of limitations did not re-start on March 1, 2013, for petitioner's claims about the new witness statement, surveillance video, and DMV sales record, because petitioner could have discovered these claims at the time of trial. Because petitioner did not file any state habeas petitions or demonstrate that he was prevented from filing a timely federal habeas petition within the year after his conviction became final, he is not entitled to any tolling and these claims are untimely.

Petitioner's claim about the revised DNA reports is also untimely even if the statute of limitations began running when he received the report. Even if petitioner gets tolling for the whole time he was pursuing state habeas petitions, he does not get tolling for the time between receiving the reports and filing his first petition (355 days), or for the time between the California Supreme Court's denial of his petition and filing this federal petition (225 days). He has not shown any extraordinary circumstances to support equitable tolling.

Petitioner does not get tolling based on actual innocence because he has not shown the court that no reasonable juror would be able to convict him after seeing the new evidence.

## V. Conclusion

For the reasons set forth above, the petition was filed outside the one-year statute of limitations and must be dismissed.

Accordingly, IT IS HEREBY ORDERED that M. Eliot Spearman, High Desert State Prison Warden, is substituted as respondent.

IT IS FURTHER RECOMMENDED that:

1. Respondent's motion to dismiss, ECF No. 11, be GRANTED and judgment be entered for respondent.

2. This court decline to issue the certificate of appealability referenced in 28 U.S.C. § 2253.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **ten days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  **Due to exigencies in the court's calendar, no extensions of time will be granted.**[6]  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 16, 2017

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

---

[6] Petitioner is informed that in order to obtain the district judge's independent review and preserve issues for appeal, he need only identify the findings and recommendations to which he objects.  There is no need to reproduce his arguments on the issues.